Qkey, J.
The contention of the Pennsylvania Company is that the Lake Shore Company had the right to take and hold the whole of the strip of one hundred feet through the Oliver lot, although it had no occasion to use the east half of it, or any part thereof, at any time; that, after holding such east half for more than twenty-one years, and after finding that it would never need the same for any purpose, the Lake Shore Company might lawfully, not merely lease temporarily, but sell, in perpetuity, one-half of such unused strip, that is, a strip twenty-five feet, wide, to' the Pennsylvania Company, and apply the purchase-money ($7,500) to its own use; that the Pennsylvania Company might thereupon construct and operate, on a different grade, a railroad on such strip of twenty-five feet, cutting off' thereby the lot-owner’s access to the different parts of his lot, which, until then, had been free and unobstructed; and that all this might be done without making to the owner of the lot any compensation whatever, except such as he received in assumed benefits, at the time of the appropriation of the strip of one hundred feet, in February, 1851.
It would be very surprising to find a decision sustaining a claim so palpably and flagrantly unjust, and we will venture to say that no such case can be found. Not only can no such case be found, but the plainest principles and the clearest authorities absolutely forbid the allowance of any such claim. In the leading case of Giesy v. Railroad, 4 Ohio St. 308, 328, Ranney, J., said: “The quantity of land that may be appropriated for this purpose is left, it is true, very indefinite. It is clear, however, that only so much can be taken as is necessary to be used in that manner. And with the power of the courts to prevent abuses, and the cer *239 tainty that it can be held only so long as it is thus used, and can not be diverted, to any other purpose, there may be little danger ot attempts to get too much.” “It may, however, be safely asserted,” said Andrews, J., “ that the acquisition of lands for the purpose of speculation or sale, or to prevent interference by competing lines or methods of transportation, or in aid of collateral enterprises remotely connected with the running or operating of the road, although they may increase its revenue and business, are not such purposes as authorize the condemnation of private property.” Rennssalaer, etc. Ry. Co. v. Davis, 43 N. Y. 137, 146. “ The surplus,” says Mr. Mills, “ beyond the amount required by the public, is .not properly taken, not being needed for the public use, and the owners are entitled to such surplus.” Em. Dom., § 23. In Swinney v. Ft. Wayne, etc. R. Co., 59 Ind. 205, it appeared that an appropriation had been made under an Indiana statute, which is the same as our act of 1848, permitting the company to enter upon lands, and, by proceedings in court, appropriate “ so much thereof as may be deemed necessary for its railroad.” The court held: “A railroad company has no authority to appropriate land for the use of another company,” and “ there is no authority of law for several railroad companies to agree that one of their number shall proceed to appropriate land for the purpose of afterward dividing it for the-benefit of all; each company must proceed for itself.” In Mahoney v. Spring Val. etc. Co., 52 Cal. 159, it was held : “A water company having commenced such proceedings, can not sell and transfer its right to prosecute them, or to take private property, to another water company, nor can the latter purchase such right. Such attempted sale and purchase, on the part of either corporation, is ultra vires in the extreme sense, and is a fraud on the court or judicial officer before whom the proceedings are pending, and whose judgment is employed in determining the necessity of the appropriation to the public use represented by the corporation petitioner, not its necessity to a use represented by another corporation.” And see Taylor on Corp., § 166; *240 Spring Valley Water Works v. San Mateo Water Works, 64 Cal. 123.
The Lake Shore Company is not a party, and hence there can be no adjudication in this suit which will operate as an estoppel as to that company; but the Pennsylvania Company is a party; it has accepted a conveyance from the Lake Shore Company; hence it may be estopped as effectually as if the Lake Shore Company had been made a party. The legal title to the strip of one hundred feet remained in Oliver, and is now in the plaintiffs. The Lake Shore Company - acquired an easement only, though an easement in perpetuity, and where there is an abandonment of such easement, the interest acquired reverts to the owner of the fee. Here the Pennsylvania Company is es-topped to deny that there was, not a forfeiture, but an abandonment of the easement, first, by non-user of the strip of twenty-five feet in question for more than twenty-one years; and, secondly, by the conveyance accepted by the Pennsylvania Company; and in such case, where the interest, as here, was an easement, it is not merely for the state to complain, but the owner has his remedy directly. Sometimes this remedy may be to compel condemnation under the statute; but the Pennsylvania Company is a foreign corporation, without power of condemnation. Sometimes the remedy may be by action to recover possession, or to restrain the running of trains until compensation is made; but where the plaintiff has stood by, as may have been the case here, until the improvement was made, either of such remedies would be harsh. Under the circumstances disclosed in this petition, an action to recover as upon appropriation seems to be the proper remedy, and consideration of the following cases will show, as well that such action is warranted, as that here was a clear case of abandonment. Heard v. Brooklyn, 60 N. Y. 242; s. c., sub nom. Strong v. Brooklyn, 68 N. Y. 1; Washington Cem. v. Railroad, 68 N. Y. 591; Haldeman v. Railroad, 50 Pa. St. 425; Lance’s Appeal, 55 Pa. St. 16, 25; Pittsburgh, etc. R. Co. v. Bruce, 102 Pa. St. 28; s. c., 10 Am. & Eng. R. Cases, 1, and *241 note; Hatch v. Railroad Co., 18 Ohio St. 92; Wagner v. Railroad, 22 Ohio St. 563, 579; Goodin v. Cincinnati, etc. R. Co., 18 Ohio St. 169 ; Atlantic & G. W. R. Co. v. Robbins, 35 Ohio St. 531, 538; Corwin v. Cowan, 12 Ohio St. 629; Longstreet v. Harkrader, 17 Ohio St. 23; Taylor v. Railroad, 38 N. J. Law, 28 ; Oregon C. R. Co. v. Baily, 3 Oregon, 164, 176; Prather v. Jeffersonville, etc. R. Co., 52 Ind. 16; Terre Haute, etc. Co. v. Rodel, 89 Ind. 128; People v. Met. Tel. Co., 11 Abb. N. C. 304; Grand Rapids, etc. Co. v. Heisel, 47 Mich. 393; Proprietor of Locks, etc. v. Railroad, 10 Cush. 385; Buckingham v. Smith, 10 Ohio, 288; Cooper v. Williams, 5 Ohio, 391; McArthur v. Kelly, 5 Ohio, 139; Jordan v. Overseers of Dayton, 4 Ohio, 294; Moorhead v. Little Miami R. Co., 17 Ohio, 340; Kansas Ry. Co. v. Allen, 22 Kan. 285; U. S. v. Great Falls Man. Co., 112 U. S. 645 ; Hopkins v. Railroad, 79 Mo. 98; Bostock v. North Staffordshire R. Co., 3 Smale & Gif. 283, 292; 26 Moak Eng. Rep. 404.
Counsel for the Pennsylvania Company, in answer to this view and such other reasons as the plaintiffs have assigned for recovery, place much reliance on Junction Railroad Co. v. Ruggles, 7 Ohio St. 1, and Hatch v. Cincinnati and Indiana R. Co., 18 Ohio St. 92. But in fact these cases support the claim of the plaintiffs. In the first ease, it appeared that Ruggles executed to the Ohio Railroad Company an instrument in ■writing, under seal, agreeing that, if the company would locate its road through any lands possessed by him, he would quitclaim to it so much .land as the company was authorized to take, to wit, a strip one hundred feet in width through such lands for the purpose of location and construction of the road, with the right to immediate possession, and of taking and converting to their own use stone, gravel, etc. The company located its road though the lands of Ruggles, but before the road was completed, the state, which had loaned its credit to the company, took possession of and subsequently sold the road, under the act of 1837 and a joint resolution passed in 1845. Ebenezer Lane became purchaser, who conveyed his title to the *242 Junction Railroad Company, and that company proceeded to build the road through the lands of Ruggles, on the strip so located by the Ohio Railroad Company. Ruggles objecting and threatening to bring suit, the Junction Railroad Company commenced an action and obtained an injunction restraining him from interfering with the construction of the road, aud this court made the injunction perpetual. Stress is placed by the court, and properly placed, on the fact that the rights, as against Ruggles, were acquired, not by invoking the power of eminent domain, but by contract, aud the case really turned on the assignability of the contract, in view of the terms of the agreement, the legislation, and the existing facts.
In Hatch v. Cincinnati, etc. R. Co., 18 Ohio St. 92, it appeared that in 1840 the Whitewater and Cincinnati Caual Company constructed a canal in Hamilton county, from Cincinnati to Harrison, passing through Hatch’s farm, and appropriating and using for such purpose a strip of land of an average width of about fifty feet. The canal was used and operated until 1863, when the Cincinnati and Indiana Railroad Company undertook to appropriate for its railroad track the land so used by the canal company, paying, by agreement between the canal company and railroad company, to the former, $50,000 therefor, and the railroad company took additional land belonging to the plaintiff, so that the strip of ground it occupied was about sixty feet wide, •and it constructed and operated a railroad thereon, but it made to Hatch no compensation additional to that which he received from the canal company. Hatch brought suit -against the railroad company, seeking to recover damages as upon an appropriation. This court doubted the right of the railroad company to appropriate the canal in invitara, but regarded the proceeding, so far as it affected the two companies, as, in effect, a sale, and as the canal company made no complaint, the court was unwilling to say the appropriation proceeding was a nullity, and it was upheld as against Hatch. As the canal was a servitude upon the lands of Hatch, unrestricted in duration, and furnished *243 means of conveying freight of every sort, and passengers, from one point to another, the court held that the change of the mode of conveyance from canal to railroad was, under the circumstances, not such change of use — not such abandonment — as entitled Hatch to compensation a second time for the land actually taken and used by one common carrier. It was the case of one common carrier occupying the identical strip of ground, and all of it, which had been occupied by another common carrier, and the burden was the same before and after the change; there was only one common carrier at any time. If the company which condemned the land and made compensation to Hatch had been a railroad company, and had built its road, no doubt another railroad company succeeding to its rights by purchase would not have been required to make compensation to Hatch, for he would thus be receiving compensation twice for the same thing; and the court held, the circumstance that the first company was a canal company and its successor a railroad company, would make no difference. But this court further held, not only that Hatch was entitled to compensation for the additional laud taken, but that he was entitled to compensation for the additional servitude to which he was subjected, the latter point decided being expressed as follows: “Where an entire tract of •land is cut asunder by an appropriation of an easement upon it by a canal company, for the purpose of a canal, and this easement is afterward transferred by the canal company to a railroad company for the purpose of a railroad; and the latter, in the construction of its railroad, throws up embankments or excavates cuts across a common public highway, skirting the tract, and constituting the only convenient medium of access between the parcels into which the tract has been, thus severed, the increased inconvenience and danger of access thus occasio'ned between the two parts of the tract are peculiar to the owner,of the tract in the use of his property, not common to the public at large, and for this increase of inconvenience and danger, he is entitled to' compensation.”
*244 As there is nothing in any ease, certainly nothing in either Junction Railroad Co. v. Ruggles, or Hatch v. Railroad, which militates against a recovery by the plaintiffs, this opinion might well end here. But other well-settled principles lead to the same conclusion.
1. The power granted by statute to the condemning company was to take and hold an easement for “ its railroad;" and such statutes must be strictly construed. And this is not a rule to be asserted and then disregarded, but to be rigidly enforced. Lane, C. J., in Kemper v. Turnpike Co., 11 Ohio, 392; Birchard, J., in Moorhead v. Railroad, 17 Ohio, 340, 350; Bartley, J., in Kramer v. Railroad, 5 Ohio St. 140, 147; Welch, J., in Toledo, etc. R. Co. v. Daniels, 16 Ohio St. 390, 396; McIlvaine, J., in Bowersox v. Watson, 20 Ohio St. 496, 588; Johnson, J., in Railroad Co. v. Furnace Co., 37 Ohio St. 321, 329. And see Straus v. Eagle Ins. Co., 5 Ohio St. 59; Spring Valley Water Works v. San Mateo Water Works, 64 Cal. 123; Pittsburgh, etc. R. Co. v. Bruce, 102 Pa. St. 23; Green’s Brice’s Ultra Vires (2d ed.), 380; Taylor on Corp., § 163.
2. Whei’e, as here, the interest acquired is only an easement, the owner of the fee retains every right in the laud appropriated, not inconsistent with the paramount authority of the company freely and unobstruetedly to build, repair, and operate its railroad, and use therefor materials fairly within the condemnation. In Goodtitle v. Alker, 1 Burr. 133, it was said of a way, that “ the owner of the soil has right to all above and under ground, except only the right of passage for the king and his people.” In Julien v. Woodsmall, 82 Ind. 568 (approved 91 Ind. 137), it was held that ice formed on the right of way of a railroad belongs to the owner of the soil, who may maintain trespass against a person who removes it without his consent. And the owner of the fee is not only owner of the minerals under the land appropriated, but also owner of the soil, gravel, trees, and herbage, except as needed by the company in constructing, repairing, and operating its road. Kan. Cen. R. Co. v. Allen, 22 Kan. 285; Taylor v. N. Y. *245 etc. R. Co., 38 N. J. L. 28; Preston v. Dubuque R. Co., 11 Iowa, 15; Aldrich v. Drury, 8 R. I. 554; Hasson v. Oil Creek Co., 8 Phila. 556; 10 Am. & Eng. Rail. Cas. 1-14. And where, as in this ease, the right of way passes through, a tract of land, leaving part of the tract on each side of the portion appropriated, the question how far access to the different parts of the lot will be affected, is always considered. Hatch v. Railroad,, 18 Ohio St. 92. And the owner of the fee is ordinarily not deprived of access to the different parts of his lot through which a railroad passes.
a. If the lot is of sufficient size, there may be a crossing thereon constructed pursuant to the statute.
b. There may be a crossing by means of a bridge, a tunnel, or a road, under conventional arrangement.
c. There may be such use of the land, acquiesced in by the company, as will amount to license to cross. Taylor’s Corp., § 371.
Hero the authority under which Oliver had access to the different parts of his lot does not appear, but it is shown by the petitiou that such access existed, and that it was unobstructed, notwithstanding the Lake Shore Company was operating its railroad; that such access was a valuable right; and that it was destroyed by the Pennsylvania Company by constructing and operating its road. We may well say that the access which the plaintiffs had, from one part of their lot to the other, existed lawfully, and that it was wrongfully destroyed by the defendant.
3. Under the constitution of 1802, which was in force when this appropriation was made, benefits could be estimated and set off' against the value of lands and damages, so as to permit the land to be taken without the payment of a dollar in money. That was done in this case. True, Judges Scott, Ranney, Bartley, and Brinkerhoff, and perhaps others, were of opinion that this was an erroneous construction of the constitution, but it was acquiesced in until it had become a rule of property, and hence this court has been and is unwilling to disturb it. See Kramer v. Railroad, 5 Ohio St. 140, 147; Corwin v. Cowan, 12 Ohio *246 St. 629, 633. Here we must assume the court took into consideration the burden as well as the benefit which one common carrier, namely, the Toledo, Norwalk and Cleveland Railroad Company, operating, without limit in time, its trains through Oliver’s lands, would be to him, and that the benefits were set off against the value of the land taken and damages sustained. Oliver agreed to assume the burden of one common carrier, and no more. In point of fact, as appears from the petition, the construction and operation of that road did not interfere with Oliver, in the use of the different parts of his lot, and this, we must assume, was apparent to the court when the condemnation was made. As the railroad company was only authorized to condemn for its railroad, the court could only take into consideration the burden which would be imposed by the construction of that road ; and as the Pennsylvania Company imposes a new burden, it is evident that Oliver and those holding under him have never been compensated for that burden, or, in other words, ■when such additional burden is considered, they have not been compensated for the land taken. If the construction of the Pennsylvania Company’s railroad on plaintiff’s land benefited them in any way, it is not shown, and it is quite apparent, that, by reason of such additional road, plaintiffs are greatly injured.
4. To be sure, it is urged that this was an appropriation of the one hundred feet for railroad purposes generally. Rut that is to reverse the rule of construction above stated; it is to assert that the Toledo, Norwalk and Cleveland Railroad Company took, not a mere easement for its road, but a fee for railroad purposes generally, with power not only to use, but to sell parcels of the land condemned to a number of railroad companies. In view of our statute and the decisions already cited, there is not the slightest authority for any such claim. An easement for one road, as we have seen, was acquired, and nothing more; and the statute contemplates only that. True, there may be a sale, where the statute authorized it; there may, as we have seen, be a change of use; one railroad company may lease its road *247 to another; there may be certain running arrangements between roads, enforced either by statute, or carried out conventionally. It is not our purpose to define the limit of the power of railroads in any of these particulars, but is sufficient to say that this does not militate in any way against any thing that I have said.
5. Defendant in error suggested that objection should have been made, at the time the appropriation proceeding was determined, to the quantity of land taken, and that the objection was waived by failure to insist on it at that time. The point has not been pressed for the obvious reason that it is plainly untenable. Doubtless the company was, in its inception, like every similar railroad enterprise, one of “ great expectations,” and Oliver, as well as the promoters of the company, may have been honestly misled as to the quantity of land which the company, in view of its business, might require in the. future. Neither Oliver, nor those holding under him, have done any thing to mislead the companies, or either of them. Even if he had suggested to the court, in 1851, that the company was taking too much land, how could he have shown that his statement was true ? He was bound to do nothing of the kind. On the contrary, as Judge Ranney shows in Giesy v. Railroad, he might well assume that when it was shown that too much was taken — that when time had demonstrated the company only needed one-half of the quantity taken — the court could interfere in behalf of the owner and set the matter right.
Without pursuing the subject further, we hold the petition presents a clear case for relief in the way stated, and hence the judgments in the courts below must be

Reversed.