## The Chicago, Kansas & Western Railroad Company v. George W. Cosper.

1. RAILROAD RIGHT-OF-WAY—*Value of Land Taken—Competent Witness.* At the trial of a case for damages for the taking of a right-of-way for a railroad through farming land, a farmer living in the neighborhood, who had knowledge of the farm for years, knew its location, advantages, character of soil, and its market value compared to other lands surrounding it, is a competent witness, and qualified to testify to the value of the land taken, and to the damages to the whole tract. (The case of *L. & W. Rly. Co. v. Hawk*, 39 Kas. 638, cited, and followed.)

2. DITCH—*Damages—Jury—Limit of Inquiry.* It is not error to show the location, use and effects of a ditch, constructed by the railroad company partly on the right-of-way and partly on the land not appropriated, when the jury, by the instructions of the court, are confined to the consideration of only such damages as are occasioned by that part of the ditch that is located on the right-of-way.

3. FARM-CROSSING—*Land-Owner May Make, When—Instruction; Refusal, Not Error.* These two things must concur to authorize the land-owner to make a farm-crossing: the necessities of the farm must require a crossing at the particular place, and its use will not interfere with the paramount use of the railroad company. (The case of *K. C. & E. Rld. Co. v. Kregelo*, 32 Kas. 608, cited, and followed.) An instruction asked for in these words, "That the plaintiff, or any person claiming under him, has, and shall at all times hereafter have, the right to make any and all crossings over the right-of-way, which they may desire to make, provided they do not interfere with the operation of the railroad," does not fairly express the law, and it was not error to refuse to give it to the jury.

4. UNDER-GRADE CROSSING—*Instruction; Refusal, Not Error.* Whether or not an opening under a bridge constructed by a railroad company can be used by the land-owner advantageously as an under-grade crossing, is a question of fact for the jury to determine; and when the record discloses that there is only one place on the farm that could be used as an under-grade crossing, and at the time of the condemnation by the commissioners an agent of the railroad company stated to the commissioners that a bridge would be constructed at that point, so as to make an under-grade crossing, and proved this statement at the trial on appeal, to influence the question of damages, and when the railroad company asks for a special instruction as to its liability on that promise, it is not error in the trial court to refuse to instruct generally on the subject of under-grade crossings.

36—42 KAS.

*Error from Chase District Court.*

CONDEMNATION for a railroad right-of-way. Judgment for plaintiff *Cosper*, for $2,474.41 damages, at the June term, 1887. The defendant company brings the case to this court. The opinion states the material facts.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.

*Scott & Frith,* for defendant in error.

Opinion by SIMPSON, C.: This was an appeal to the district court of Chase county from an award made by commissioners to George W. Cosper, in the condemnation of a right-of-way of the railroad company through his land. Cosper owned a farm of three hundred and sixty acres, adapted to and used exclusively for the raising of cattle. The line of road as constructed and operated, extended for more than three-fourths of a mile through his land. It separated his pasture land from the creek and timber, and from his stock-water, and, by reason of cuts and embankments, made access from one to the other difficult, and crossings expensive to construct. The commissioners awarded him $672.50. In the district court the jury returned a verdict in his favor of $2,474.41. A new trial was refused, and many exceptions saved, which are assigned for error here, and among the most important are:

*First:* It is insisted that the record shows that many of the witnesses who testified at the trial to the value of the land taken and the damages to the whole tract, did not have the necessary qualifications to express opinions on these subjects.

1. Railroad right-of-way—value of land taken—competent witness.

They were farmers living in the neighborhood, who had knowledge of the farm for years, knew its location, advantages, character of soil, and its market value compared to other lands surrounding it. This brings these witnesses fairly within the rule announced by this court in the recent case of *L. & W. Rly. Co. v. Hawk,* 39 Kas. 638.

*Second:* Witnesses were asked about the "value" of the land, and what the land was reasonably "worth," and responded to these questions with opinions as to the "value" and "worth" of the land.   These questions and answers were at first objected to by the attorneys of the railroad company, and finally apparently acquiesced in, as they used the same expressions on the cross-examination of Cosper's witnesses, and in the examination-in-chief of their own.   As a rule, both sides used the expressions "value" and "worth," instead of "market value," the latter being used very sparingly by either side.   We are not disposed, in this state of the record, to give the plaintiff in error the benefit of the objections made and exceptions saved in the first part of the trial, because practically they were abandoned and waived by the subsequent use by the complaining party of these same words.   In fact, all understood that these words were used as synonymous with "market value," and the court charged the jury that by "value," it was meant market value, that is, the price the land was fairly worth in the market.

*Third:* There was evidence offered by the plaintiff below, under objection by the railroad company, of the fact that a ditch had been made by the company in the construction of the road, in such a way that it caused injury to the land of Cosper, by bringing surface-water in such quantities that the ditch was continually deepening and widening, and the land of Cosper was crumbling into it, and the soil was washing into the ditch.   This ditch was partly on the right-of-way, and partly on Cosper's land.   It was about one hundred and sixty rods long, and when constructed was three and one-half feet deep and from five to six feet wide.   It was built to catch the surface-water, drain the embankments, and carry the water to the creek.   It seems to have been a necessity, as without it the surface-water would overflow the land of Cosper, undermine and wash away the embankment, and destroy the road-bed.   There is no allegation that it was negligently or defectively constructed.   It is now claimed that evidence as to the location, use and effects of the ditch, was improperly

admitted. The plaintiff below could not recover in this action for that part of the ditch that was located on his land and was outside of the right-of-way; neither could he recover for the damages done the adjoining land by that part of the ditch. In the case of *Reisner v. Depot & Rld. Co.*, 27 Kas. 382, this court says:

"Beyond the limit of what was condemned, the company had no right whatever, and if it has used other portions of the lot of the plaintiff, it is not a matter of inquiry upon an appeal from the condemnation. If the company has taken possession of any part of the lot beyond that which has been condemned, it is a trespasser thereon, and an action of ejectment may be prosecuted for its recovery, or an action for damages may be maintained for all wrongful acts done outside of the right-of-way acquired by the condemnation."

The plaintiff below had a right to show the location of this ditch, its length, depth and width, as affecting the inconvenience of access from one part of the farm to the other; and he had a right to show that the part of the ditch that was located on the right-of-way injuriously affected his adjoining land. The record shows that this question was a subject of much comment by the counsel on both sides and by the court, and the following instruction was given, that fairly states the law:

2. Ditch—damages—jury—limit of inquiry.

"No claim for damages can be founded upon the negligent and improper construction or apprehended negligent and improper operation of the railroad, or for digging ditches upon plaintiff's land outside the right-of-way. For all such, actions other than this one, for the recovery of damages thereon will lie. It is only such damages as necessarily result from or which may fairly and reasonably be presumed to result from the construction and operation of the road in a legal and proper manner that can be taken into account by you."

With this instruction, it was not error to refuse to give the tenth and eleventh instructions asked for by the railroad company. We have carefully examined the evidence, and cannot find that any one witness estimated the damages in dollars and cents, that resulted from the location and construction of the

ditch. The verdict is a general one, there having been no special questions as to particular items of damages requested, or submitted. It may be that the jury in arriving at their verdict, estimated the damages done by that part of the ditch located on the right-of-way. It was proper that they should have taken this into consideration, and assuming that they did, and indulging in the luxury of the presumption that they obeyed the instruction of the court, and did not consider the effect on the adjoining land of that part of the ditch located on the land of Cosper, there is no cause of complaint on the part of the railroad company.

*Fourth:* The next complaint is based upon the refusal of the court to give the following instruction:

"You are instructed that the plaintiff, or any person claiming under him, has, and shall at all times hereafter have, the right to make any and all crossings over the right-of-way through plaintiff's land which plaintiff or such person may desire to make, providing that in the use of the same they shall not so use them as to interfere with the operation of the railroad of defendant over such right-of-way."

The evidence in the record, as a matter of fact, conclusively demonstrates that the line of road as constructed through this land — for the road was built at the time of the trial on appeal — was so located as to cause great inconvenience of access from one part of the farm to the other. The dwelling-house, stables, barn and pasture were upon one side, and the timber, water, and feed lots on the other. There was but one place on the line where a crossing could be had at grade. All the witnesses examined at the trial for the plaintiff below, made these facts very important and controlling in estimating the damages. It would seem, therefore, that this was a case in which the law as to farm-crossings should have been plainly stated to the jury; but the instruction offered is very objectionable, and it is not error to refuse to give it. The land-owner certainly has not the right to make any and all crossings that he may desire. It is said in the case of *K. C. & E. Rld. Co. v. Kregelo*, 32 Kas. 608:

"That as a general rule the land-owner has a reasonable

right to farm-crossings over a right-of-way condemned by a railroad company running through his premises, at such places as the necessities of his farm demand."

Mills on Eminent Domain, § 213, says:

"The erection of farm-crossings is under the control of the railroad, and the owner has no right to make them when and where he pleases. His convenience must yield to the public safety."

These two things must occur to authorize the land-owner to make a farm-crossing: the necessities of the farm must require a crossing at that particular place, and its use will not interfere with the paramount use of the railroad company. The instruction refused recognized the paramount use of the railroad company, but stated the right of the land-owner to construct a crossing much too broadly. The following instruction was given by the court: "The owner still retains the title, subject to such use by the railroad, and he may use and enjoy it for all purposes and at all times not inconsistent with the right of the railroad;" and it is claimed by the defendant in error that this "glittering generality" is a sufficient declaration of the law on that subject. While it may safely be said that it is included in the instruction, yet we think that the jury ought to have been told in plain words that the land-owner had the right to crossings at such places as the necessities of the farm demanded, so that this could have been taken into consideration in the determination of the question of damages. We do not assert that it was not, but would have much preferred if their particular attention had been called to it in the instructions. But as the assignment of error in respect to this matter is, that the court erred in refusing to give the instruction asked for, and as that instruction was not a fair statement of the law, there was no error committed by the refusal to give it.

*Fifth:* At a point on the line of road where a ravine makes a bend across the right-of-way, the railroad company built a bridge, which was fifty feet long on the top and about thirty-five feet long at the bottom, of the width of the road-bed,

3. Farm-crossing —land-owner may make, when—instruction; refusal not error.

and about nine feet high. The water that gathers in the ditch referred to in a former part of this opinion, is discharged into the small stream under this bridge. It is insisted by the railroad company, that the opening under the bridge could be used by the defendant in error very advantageously as an under-grade crossing, and with this view it requested the trial court to charge as follows:

"7. You are instructed that the plaintiff, or any person claiming under him, will have the right to keep and maintain any and all under-grade crossings which could be kept and maintained across said right-of-way on plaintiff's land, where the same will not in any way interfere with the operation of defendant's railroad across the right-of-way.

"8. You are instructed that the plaintiff, and all persons claiming under him, would have a right at all times to use the under-grade crossings made by the bridge on plaintiff's land, concerning which there has been testimony offered, for the purpose of allowing any stock to pass to and fro under such bridge, and that such persons would have the right to so improve the crossing under such bridge as to make it a good crossing and a safe crossing for cattle and stock, when such improvements would in no wise interfere with the operation of defendant's railroad over said right-of-way."

It is claimed by the defendant in error that this bridge is built on low ground; that great quantities of mud and sand gather under the bridge; that it cannot be confined to a ditch; and that it is impracticable to make a passage-way for cattle under the bridge without great expense. It is in evidence that a short time before the trial, a witness attempted to pass under the bridge on horseback, and it was with great difficulty that he kept from "miring down." In answer to questions by the attorney of the railroad company, this witness stated that it would require much labor to make a crossing under the bridge, and that it would have to be riprapped to be safe for cattle. The contention of the railroad company is, that the building of the bridge has furnished Cosper an under-grade crossing that materially facilitates the access from one part of the farm to the other, and that this reduces his damage. The reply of Cosper is, that the opening under the

bridge cannot be used without the expenditure of much money and labor, and hence the damage is not affected. The question is complicated by another fact: in the course of the trial, one of the witnesses testified that he had been one of the commissioners who had condemned the right-of-way; that accompanying them was an agent of the railroad, who pointed out certain places at which there were to be bridges built on the Cosper place. In view of this testimony, the attorney of the railroad company requested the court to charge the jury—

"If, at the time the commissioners condemned the right-of-way, representatives of the railroad stated to them that a bridge would be placed about where the bridge is built, so as to have an under-grade crossing for stock there, and this matter was considered by the commissioners, then in such case the railroad company would be bound to keep and maintain such bridge so as to always allow an under-grade crossing."

This the court refused to give, but did instruct the jury as follows:

"If at the time the commissioners condemned the right-of-way through the plaintiff's land an authorized representative of the railroad company stated to them that a bridge would be placed about where the bridge is built, so as to allow an under-grade crossing for stock, and this statement was reported by the commissioners as a promise of the railroad company, and that the award was made with reference to the same, then the defendant will be bound to make and maintain such bridge, and allow the same to be used as an under-grade crossing, provided it will be of substantial utility to the farm, and will not interfere with the operation of the defendant's road."

The instruction given expresses the rule better than the one refused, because it states both the rule and limitations respecting crossings. The facts calling for this instruction were proved by the railroad company. Its own witness gave them in response to questions by the attorney of the company, and it requested the instruction that was substantially given. It deemed the fact important enough to have the court instruct the jury as to the law applicable. But the plaintiff in error does not so much object to this instruction as it does to the effect of giving it disconnected from the other two offered, and

claims that, disconnected, it is misleading. The company proved the fact to lessen the damages, on the theory that it had promised and provided an under-grade crossing, and if it did not answer the purpose the company would be bound to perform the contract, and that it could be enforced against it in a proper action for that purpose. It claims, too, that if the opening under the bridge is utilized as a crossing, the two parts of the farm would be as easy of access to each other as they were before the construction of the road, by reason of the lane. It seems to us that by this evidence and instruction the company has narrowed the issue as to the under-grade crossing to the use of the bridge. And in this attitude of the question the jury could fairly say that the railroad company had not provided a suitable under-grade crossing, as it had promised, and hence they could estimate full damages for inconvenience. It made the promise in the presence of the commissioners, at the time of the appraisement of the right-of-way, and it proves this promise on the trial of the appeal. It made this showing undoubtedly to influence the amount of damages occasioned by the inconvenience of passing from one part of the farm to the other, caused by the construction of the road. Then as to the first instruction refused, there was no evidence to which it was applicable; the only place on the farm where there could be an under-grade crossing was at the bridge. The second instruction should have been given, if the railroad company had not introduced the evidence tending to show that an under-grade crossing at the bridge had been promised, and had not asked a special instruction on that subject; so that upon the whole record, and as the question arose and was presented, we do not think the court materially erred in refusing to give instructions numbered respectively seven and eight.

1. Under-grade crossing—instruction; refusal, not error.

The other assignments of error are not important. We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.