# COURTS OF APPEALS,

## STATE OF KANSAS.

### THE MISSOURI PACIFIC RAILWAY COMPANY V. NICHOLAS PFRANG.

#### No. 269.

1. EVIDENCE—*Variance not Material.* The plaintiff sought to recover of a railway company damages for horses killed by it in the operation of its road, under the act of the legislature of 1874. He alleged that the company was liable for not having its right of way enclosed with a good and lawful fence at the time of the injuries complained of, charging that it negligently constructed a gate with defective fastenings at an opening in its right of way. Plaintiff, on the trial, without objection, proved that the fastenings of the gate had become unsafe, and had remained so a long time, and were so when the horses escaped on the track. *Held,* That the court did not err in overruling a demurrer to the evidence upon the ground that there was a variance between the allegations and the proof. (*Railroad Co. v. Caldwell,* 8 Kan. 244.)

2. —————— *Offered by Both Parties—Peremptory Instruction Refused.* After the court had overruled this demurrer of the defendant to the plaintiff's evidence, the defendant offered evidence upon its defense as to the sufficiency of the fastenings at the time of the injury. After the evidence was concluded, the defendant requested a peremptory charge to find for the defendant, upon the ground that the evidence was not sufficient to entitle the plaintiff to recover under the allegations of the bill of particulars. *Held,* That the court did not err in refusing to so charge the jury.

3. —————— *Instructions upon, not Error—Negligence.* It was not error for the court to refuse to say to the jury that, unless the evidence showed that the company's negligence was in the origi-

1—7 KAN. APP.

nal construction of the gate, the plaintiff could not recover. It was not error in such case for the court to charge the jury upon the case as made by the evidence, notwithstanding this variance.

4. RAILWAY FENCE—*Duty of Company to Repair Gate in—Implied Contract.* If in construction of a right-of-way fence a railway company puts in a gate as part of such fence, it is bound to keep the same in repair the same as any other part of the fence, unless as between it and another person it is relieved therefrom by contract, either express or implied; such contract will not be implied from the mere fact that the only person benefited thereby is the owner of the land subservient to the right of way.

Error from Nemaha district court; J. F. THOMP-SON, judge. Opinion filed January 6, 1898. Affirmed.

*Waggener, Horton & Orr*, for plaintiff in error.

*John Stowell, R. C. Bassett*, and *E. G. Wilson*, for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J. : The defendant in error sued the railway company to recover the value of horses alleged to have been killed by the railway company. He sought to recover, first, under the statute of 1874 making railway companies liable for such damages without regard to negligence in case they failed to properly fence their right of way ; and, second, for the reason that the railway company caused the injury by negligently running its trains over the horses after they had gotten upon the right of way.

The petition alleged that the railway company was also negligent in not providing proper fastenings for a gate, it being a part of the right-of-way fence between the right of way and the land upon which the plaintiff's horses were being pastured. So that both the statutory liability under the act of 1874 (Laws of 1874, ch. 94) and the common-law liability against the railway company were charged.

It appeared upon the trial, in addition to the contention that the original fastenings upon the gate were defective and insecure, that the railway company had negligently permitted the fastenings to become more insecure, and it was through this negligence that the horses escaped and got upon the railway track.

It is contended in behalf of the railway company, that, inasmuch as the allegations of the petition charge that in the construction of the gate the railway company was negligent, there was a variance between this proof and the allegations of the petition. Counsel say that this question was raised by the company's demurrer to the evidence, by its request for peremptory instructions in its favor, and by the special instructions asked in its behalf.

The company did not, upon the trial, make any objections to the introduction of evidence on the ground that it did not correspond with the allegations of the petition, but joined in the trial of that issue and offered evidence thereon. Under the provisions of sections 133 and 134 of the code, as construed by the supreme court in the case of *Railroad Co. v. Caldwell*, 8 Kan. 247, this is not reversible error. The supreme court, speaking by BREWER, J., in that case, says:

"Something of an argument might be made to show that this was no case of variance, but rather a case in which only a part of the allegations of the petition are proven. But waiving this, and conceding it to be a case of variance, still as it is such a case as would manifestly require the court to give leave to amend the petition to conform to the facts proven, and as the defendant could not justly claim to be prejudiced by such amendment, we do not think the judgment ought to be disturbed because no formal amendment has actually been made."

The plaintiff in error did not contend that it was

misled, but it was apparently ready to meet the issue presented by the evidence.

The second assignment of error is, that under the undisputed evidence the railway company was not liable for any damages; the third is, that the trial court erred in refusing to sustain its demurrer to the plaintiff's evidence; and fourth, that the trial court erred in refusing to give judgment in favor of the plaintiff in error upon its motion therefor, because the findings of fact by the jury and the undisputed evidence entitled the company to such judgment.

These three assignments will be considered together. They are based upon the variance heretofore alluded to; this is deducible from the argument presented in support of these assignments. Counsel for the company say that the court had no right to enlarge the issues in the case by its instructions, and thereby present to the jury a case not made by the pleadings. The conclusion upon the first assignment likewise controls these three. The court committed no error therein.

The fifth, sixth and seventh assignments of error are to the effect that the court erred in not giving to the jury a binding charge to find for the defendant: First, upon the pleadings; second, upon the pleadings and the evidence; and third, from the pleadings and the evidence as it related to the stock law of 1874. From a close scrutiny of the record we cannot say that the evidence of the plaintiff lacked anything to entitle him to recover *prima facie*. The petition alleged a cause of action, both under the statute and the common law. The evidence showed a right *prima facie* to recover upon either theory of the case; so that it was a question for the jury to determine from all the evidence whether the plaintiff was entitled to re-

cover. There was conflicting evidence to be weighed by the jury, and the court would have invaded the province of the jury had it given the instructions requested. The jury found in its special findings for the plaintiff in error upon the question of its common-law liability, and based its general verdict upon the company's failure to maintain a fence on its right of way.

The eighth assignment of error is the refusal of the court to charge the jury as follows :

"Under the statute of 1874, a railway company, whose railroad is not enclosed with a good and lawful fence to prevent animals from being on such road, is liable to the owner of such animals for killing or injuring them in the operation of the railroad without regard to any question of negligence in the management or operation of trains ; but a railway company whose railroad is enclosed with such a fence cannot be held liable in any case under said statute of 1874."

The court did not give this instruction verbatim in its general charge, yet it did give it in substance.

The ninth assignment of error is that the court refused to give to the jury the sixth instruction requested by the defendant, to the effect that, unless the evidence showed that the company's negligence was in the original construction of the gate and not by reason of any negligence in maintaining the gate, the plaintiff could not recover under chapter 94, Laws of 1874. This contention has already been disposed of.

The tenth assignment of error is that the court refused to charge the jury as requested by the defendant in instruction numbered seven. The instruction was given in the general charge, almost verbatim.

The eleventh assignment of error is that the court did not charge the jury as requested by the defendant

in its eighth request.. This instruction was likewise given in the court's general charge.

The twelfth assignment of error is the refusal of the court to charge the jury as follows :

"If you find that the landowner considered the fastenings defective or insufficient, but made no complaint thereof, although having frequent opportunity, and said horses were turned into the field without taking any additional precaution for fastening the gate, then the landowner was guilty of contributory negligence and the plaintiff cannot recover under said statute of 1874."

In the first place, the question of contributory negligence was one to be left to the jury upon the facts. It cannot be said that because the landowner made no objection to the character of the fastenings on the gate the plaintiff would be thereby chargeable with contributory negligence. There was no relation of principal and agent existing between the plaintiff and the landowner.

The thirteenth assignment of error is the refusal to charge the jury as requested by the defendant in its fifteenth request. The substance of this request is embodied in the general charge as favorably to the defendant as though its request had been granted. The same is true with the fourteenth assignment of error.

The fifteenth assignment of error is in substance the same as the twelfth. It attempts to measure the right of the plaintiff to recover against the defendant by the situation of the landowner ; to impute to him all the knowledge and to charge him with the result of the acts of the landowner.

The sixteenth assignment of error is that the court refused to charge the jury as follows :

"It does not appear that the plaintiff was under any obligation, duty or necessity of pasturing his horses

on W. S. Bontrager's land.  It seems to have been a matter of choice and mere convenience, and if you find that the plaintiff opened, closed and fastened said south gate when he put his horses into the stock field on January 8, 1893, and had full opportunity of examining the gate and its fastenings at said time, and he then considered and treated them as sufficient, then he ought not now to complain that they were insufficient, for the purpose of casting liability upon the defendant for the plaintiff's own benefit.''

The fact that the plaintiff was not the owner of the land upon which the stock was running, having a license therefor only, can make no difference as to the liability of the company.  The mere fact that he put his horses in through the gate in controversy on the morning of the 8th of January, and had that opportunity of seeing the gate and how it was fastened, is not sufficient to work an estoppel against him to claim that the fastenings on the gate were not sufficient.  Neither can it be said as a matter of law that the mere fact that he had that opportunity to inspect the gate and its fastenings charged him, in using the pasture as he did, with such contributory negligence as would bar his right of recovery.

The seventeenth assignment of error is that the court instructed the jury as follows :

''A landowner whose farm is divided by a railroad is entitled to necessary crossings, and when the railroad company fences its track through his farm and constructs gates in the fences at such crossings, the gates being merely a part of the fence, it is the duty of the railroad company to furnish such gates with good and sufficient fastenings, and the omission to furnish such fastenings is negligence.

''Where a railroad company at such private crossings constructs a gate with defective and insufficient fastenings, and, by reason thereof, stock strays upon such railroad company's road through said gate, and

is struck by said railroad company's train, the company is liable to the owner of the stock for the damages sustained; and if such company fails to pay such damages for thirty days after demand, and suit is brought, it is also liable for a reasonable attorney fee.

"A railroad company is not only required to construct a gate with reasonably sufficient fastenings at a private crossing, but it must maintain the same in a reasonably sufficient condition to prevent stock getting through such gate; and if such gate is constructed with sufficient fastenings, and afterwards, through use and wear, the fastenings become defective and insecure, and are permitted to remain in a defective condition for such length of time that with ordinary care and diligence the railroad company could have discovered and remedied the defect, then the company is charged with notice of the defect.

"If the railroad company constructed the gate in question with good and sufficient fastenings, and had, up to the time of the accident, kept the same in good repair, then it was the duty of the owner of the land, or the person occupying the land, to keep the gate closed and fastened so far as was necessary to keep the animals off the railroad, and there can be no recovery for the loss and injury of said animals under the statute of 1874 on account of the gate being left open or unfastened by the plaintiff, the landowner, or any neighbor, or any person other than some servant, agent or employee of said company."

The contention in support of this assignment is that a railroad company is not required to erect or maintain gates at a private crossing upon a farm for the convenience of the landowner whose farm it severs.

The case first cited by counsel in support of this contention is *Adams v. A. T. & S. F. Rld. Co.*, 46 Kan. 161, in which the court says:

"And where the railroad company fences its track through his farm, and constructs gates in the fences

Railway Co. v. Pfrang.

at such crossings for the accommodation of the land-
owner or his tenant, the duty rests upon him to keep
the gates closed, and if he neglects to do so, and his
animals pass through them upon the track and are
killed, without the negligence of those operating the
trains, the railroad company is not liable for the loss.''

In this case the court found it a fact, by way of pre-
sumption, that the landowner had left the gate open
and was therefore immediately responsible for the
fence not being a perfect fence.   It needs no argu-
ment to sustain the proposition that the company in
such case would not be liable for damages occasioned
to the landowner by his own act.

The next case cited is *K. C. & E. Rld. Co. v. Kregelo*,
32 Kan. 608.   This was an appeal from an award of
commissioners appointed to condemn the right of way
through the land of the defendant in error.   The court
says :   ''As a general rule, the landowner has a reason-
able right to farm crossings   .   .   .   at such places
as the necessities of his farm demand, provided such
crossings and the use thereof will not interfere with
the paramount rights of the railroad company.''

The court was considering the statute in relation to
condemnation proceedings, and said that the statute
did not require a company to build and maintain cross-
ings.   This is very different from a company's liability
for stock killed under the statute of 1874.

The next case referred to in counsel's brief is *K. C.
Rly. Co. v. Allen*, 22 Kan. 285.   This was also an appeal
from condemnation proceedings and has no applica-
tion to the questions involved herein.

The next case cited is *A. & N. Rld. Co. v. Gough*, 29
Kan. 94.   This was an appeal in condemnation pro-
ceedings.   The court says that the company was not
required by the statute to go to the expense of con-
structing and maintaining crossings.   It refers to

crossings over the track and has no relation to the obligations imposed upon railroad companies to pay for stock killed by them on their line without regard to their negligence. The statute cited in the brief is the same.

The next citation is *C. K. & W. Rld. Co. v. Cosper*, 42 Kan. 561. This is also an appeal in condemnation proceedings, and, as in the other cases cited, the court was discussing the measure of damages to the land through which the right of way was condemned, and incidentally, in that case, the court discusses the right of the owner of the farm to make a crossing.

The statute of 1874 imposed upon railway companies liability to pay for all stock killed on their lines of road, in the operation thereof, without regard to negligence. By another section it is provided that railroads which are fenced with lawful fences are exempt from the operation of this statute. So that it is simply a question whether the company had properly fenced and maintained a fence along its right of way. Had there been a contract between the owner of the farm and the railway company by which the burden of erecting and maintaining this fence had been placed upon the owner of the farm, the result might have been different. But it is not claimed that the obligation of the company was in any manner changed from it to the landowner by any contractual relation between them, express or implied. The obligation still rested upon the company.

The next assignment of error is that the trial court erred in rendering judgment against the company. The evidence supported the findings of the jury and their findings warranted the judgment. There was no error in the proceedings warranting a new trial.

The twenty-first assignment of error is that the

court erred in refusing to sustain the motion of the plaintiff in error to reapportion the costs between the parties. We cannot determine from the record whether the costs from which the company sought to be relieved arose under the contention of the plaintiff that the company was liable at common law. We are unable to determine from the record that the court erred in refusing to retax the costs. We cannot discern from the record what costs were taxed to the plaintiff in error and what were taxed against it.

The judgment is affirmed.

MAHAN, P. J., concurring.

WELLS, J., having been of counsel, not sitting.