THE KANSAS CITY & EMPORIA RAILROAD COMPANY v. J. L. KREGELO.

1. FARM-CROSSINGS *over Railroad Right-of-Way.* As a general rule, the land-owner has a reasonable right to farm-crossings over a right-of-way condemned for a railroad company running through his premises, at such places as the necessities of his farm demand; *provided,* such crossings and the use thereof will not interfere with the paramount rights of the railroad company.

2. FARM-CROSSINGS, *made by Company, Jury to Consider.* While the statute does not require railroad companies to go to the expense of constructing farm-crossings over their rights-of-way running through cultivated or other premises, yet where they do construct such crossings, it is proper that the fact should go to the jury in awarding damages to the owner of the land taken for the railroad.

3. FARM-CROSSINGS *in Plan of Right-of-Way, Company to Construct.* If farm-crossings are a part of the plan of a railroad where its right-of-way crosses the farm and are shown on the map and profile of the road on record, and are taken into consideration by the commissioners in making the award of damages, the court or jury upon appeal should assess the damages to the owner of the land with reference to such plan of construction, and the railroad company becomes bound thereby to construct such crossings.

4. FIRES, *How Considered as to Damages.* In awarding damages to the owner of land taken for a railroad, the exposure of his remaining land and buildings to fire from the company's trains or engines is a proper element to be considered in making the estimate; but in making this estimate, it is competent only to take into consideration the risk of fire set out by the railroad company without its fault and by reason of the operation of the road through the premises. For fires occurring by its

negligence, the company is liable to the owner in a proper action instituted therefor, and this element should not be taken into account in estimating the damages.

5. DAMAGES, *Too Remote for Estimate.* In awarding damages to the owner of land taken for a railroad, the jury cannot consider as an element of damages the increased risk to the orchard on the premises by reason of leaving it more free of access to persons traveling along the railroad, and to tramps and employés of the railroad company, as such damages are so remote and speculative as to be without and beyond any possibility of ascertainment known to the law.

## *Error from Lyon District Court.*

APPEAL by *Kregelo* from the award of commissioners appointed to condemn a right-of-way through Lyon county for the Kansas City & Emporia railroad company. The report of the commissioners was made October 19, 1882, and the appeal taken October 28, 1882. Trial at the March Term, 1883, and verdict against *The Railroad Company* for $2,045.37. This sum the court adjudged to stand as an award of damages in favor of the plaintiff in the condemnation proceedings appealed from; and it also rendered judgment for plaintiff for $206.80 costs. *The Company* brings the case here. The facts appear in the opinion.

*A. A. Hurd, C. N. Sterry,* and *Robert Dunlap,* for plaintiff in error.

*Scott & Lynn,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: J. L. Kregelo is the owner of a farm containing a quarter-section of land in Lyon county — being the southwest quarter of section 17, township 19, range 12. A right-of-way was condemned and appropriated by the Kansas City & Emporia railroad company across the cultivated part of this land. The road enters the farm at its west line, and runs diagonally in a southeasterly direction through it. Before the road was constructed there were three tracks or private roads to go to different parts of the farm. One of these was a lane

39—32 KAS.

running on the east side of the farm from the barn-yard to the pasture land. The ingress to and egress from this pasture was by means of this lane. The evidence showed that at the time of the trial the company had made a crossing at the point where the railroad crossed the lane so that stock could pass backward and forward over the railroad in going up or down the lane. The second track was one through the orchard, giving access from the main premises to the farm along the fence west of the orchard and running out to the meadow land. The third was about the middle of the corn land, which the right-of-way, in passing through, cuts nearly in two. The amount of land actually taken for the right-of-way is six and sixteen one-hundredths acres. The commissioners appraised the value of the land taken, and assessed the damages at the sum of one thousand dollars. Kregelo appealed from the award.

Upon the trial, one C. S. Beadle was produced as a witness on the part of the company, and testified that he was the engineer of the company, and had been the engineer ever since the building of the road was commenced; that at the time of the condemnation a map and a profile of the road, the same as filed in the clerk's office, were presented to the commissioners; the map showed the location of a crossing to be built by the company between the east and west line of the farm, in the land designated as "corn" or plowed land. The commissioners, in assessing damages, took into consideration that this crossing was to be built by the company. On the trial the company sought to show that it had ordered the crossing to be built. The court rejected the evidence. Thereupon the company offered to prove that a farm-crossing had been ordered to be constructed at its expense over the road at a point marked upon the map and profile, so that the plowed land through which the railroad runs would be restored to the same condition and as good as it was before any road was ever located there, so far as the crossing through the field was concerned. This evidence was objected to as irrelevant, incom-

petent, and immaterial. The court sustained the objection. In directing the jury, the court said:

"The law requires every railroad company to construct and maintain good and sufficient crossings where the road crosses any public highway; but the law does not impose upon and require it to construct crossings anywhere else."

The court also refused to give the following instruction, which was prayed for by the company:

"Under the laws of this state, the defendant, by the condemnation proceedings instituted, did not, has not, and will not, acquire the absolute ownership of the land condemned through the plaintiff's farm for right-of-way, but only has and will by such proceedings acquire the right to use and occupy such land as and for the purposes, needs and necessities of a railroad so long as it continues to use the same for such purposes. The legal title in fee simple of such land remains in the plaintiff, subject only to the right of user on the part of the defendant, and the plaintiff has and will have at all times the right to use any part of such right-of-way in any way which will not interfere with the use thereof for its purposes by the defendant, and which will not be inconsistent with the defendant's right of use."

Among the special findings are the following:

"Q. 15. How much has the condemnation for the building of the road through plaintiff's land damaged the plaintiff, by reason of cutting his corn land in two?

"A. Four hundred and fifty dollars.

"Q. 16. How much damages, if any, has the plaintiff suffered by the condemnation of the right-of-way through his land, by reason of cutting him off from any crossing on his farm that he had before such right-of-way was condemned, and which, by such condemnation and the building of the road, has been rendered worthless?

"A. Six hundred and ten dollars.

"Q. 17. What distance will plaintiff have to go further than he had to go before the construction of this road, each time that he turns his cattle into his pasture or brings them from his pasture to his corral?

"A. Three hundred and fifty rods.

"Q. 18. What length of time will it take the plaintiff, or any person for him, in bringing the cattle into the corral, or

driving them from the corral to the pasture, longer, by reason of the construction of defendant's road, than it took before, each time that such cattle are driven to the corral or to the pasture?

"A. One hour.

"Q. 19. How much more time in the year will it require a person in farming the plaintiff's farm to work, by reason of the building and operation of the road, than it did before the road was built and operated?

"A. Fifteen days."

In rejecting the evidence that the company had ordered the crossing to be built, and in refusing to give the instruction asked for, material error was committed. While the statute does not require railroad companies to go to the expense of constructing farm-crossings, yet where they do construct such crossings it is proper that the fact should go to the jury on the question of damages. Again, if such crossings are a part of the plan of a railroad where it crosses the farm and are shown on the map and profile of the road on record, and are taken into consideration by the commissioners in making the award of damages, the court or jury upon appeal should assess the damages with reference to such plan of construction, and the railroad company becomes bound to construct such crossings. (*Kyle v. Railroad Company*, 2 Barb. Ch. 489; Mills on Eminent Domain, ¶ 213.) Therefore the direction of the court that the law does not require railroad companies to build crossings anywhere except upon public highways was, in this case, misleading.

Furthermore, the refusal of the instruction asked for was very prejudicial. As a general rule, the land-owner has a reasonable right to farm-crossings at such places as the necessities of his farm demand, provided such crossings and the use thereof will not interfere with the paramount rights of the railroad company. (*Rly. Co. v. Allen*, 22 Kas. 285; *Rld. Co. v. Gough*, 29 id. 94; Comp. Laws of 1879, ch. 23, §§ 81, 82.) The jury should have been clearly informed of the paramount rights of the railroad company to the right-of-way, yet at the same time the rights of the land-owner ought to have

been explained in such a manner that the jury might have understood that the land-owner had the right to the use of the condemned property at the crossing made and at the one proposed to be made by the railroad company, and to such other farm-crossings as would not interfere with the use of the property for railroad purposes. It is a question of fact, not of law, whether the necessities of the railroad company demanded exclusive occupancy of its right-of-way for its purposes, and what use of the property by the land-owner is a detriment to or interference with the rights of the road. (*Railway Company v. Allen*, supra.) If the jury had been properly directed, it is very evident that the special findings returned by them would have been answered differently in many respects.

From the special findings, it also appears that the jury awarded one hundred dollars damages for the increased risk of fire. The general current of authority is to the effect that in awarding damages to the owner of land taken for a railroad, the exposure of his remaining land and buildings to fire from the company's trains or engines is a proper element to be considered in making the estimate. This upon the ground that the increased exposure to fire depreciates the value of the owner's remaining land, and if such increased exposure to fire does diminish the value of the remaining property, the owner is entitled to some compensation therefor; but the most that can be claimed concerning the assessment for the increased exposure to fire by the passage of the railroad track through the premises, is that it is competent only to take into consideration the risk of fire set out by the trains or engines without the fault of the company, and by reason of the operation of the road through the premises. If fires occur through the negligence of the company, it would be liable to the owner, and this element should not be taken into account in estimating the compensation. (*Adden v. Railroad Co.*, 55 N. H. 413; *Covill v. Railway Co.*, 19 Minn. 283; *Lance v. Railroad Co.*, 57 Iowa, 636; *Swinney v. Railroad Co.*, 59 Ind. 205; *Railroad Co. v. Murdock*, 68 id. 137; *Railroad Co. v. Barlow*, 3 Oreg.

311; *Railroad Co. v. McComb*, 60. Me. 290; *Pierce v. Railroad Co.*, 105 Mass. 199; *Railroad Co. v. Sawyer*, 71 Ill. 361; 1 Redfield on Railways, 4th ed., 290, § 8, and notes; Pierce on Railroads, pp. 174, 175.)

The decisions of Pennsylvania, and one or two other states, oppose the allowance of damages for the increased exposure to fire, but they are contrary to the general course of decisions upon the subject, and therefore we do not follow them. (*Railroad Co. v. Hummel*, 27 Pa. St. 99; *Patton v. Railroad Co.*, 33 id. 426.)

The jury, in assessing damages, also allowed the sum of $250 for the increased risk to the orchard on the premises, by reason of leaving it more free of access to persons traveling along the railroad, and to tramps and employés of the railroad company. Such damages are so remote and speculative as to be without and beyond any possibility of ascertainment known to the law. They cannot and ought not to be taken into consideration in estimating the compensation which the landowner is entitled to recover from the company. (*Railway Co. v. Lyon*, 24 Kas. 745; *Lance v. Railroad Co.*, supra; Comp. Laws of 1879, ch. 23, § 82.)

There are other alleged errors referred to, but as the more important ones have been commented upon, it seems to us, in view of the prior decisions of this court, that it is unnecessary to refer further to the matters presented.

The judgment of the district court will be reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

All the Justices concurring.