L. & W. Rld. Co. v. Ross.

# THE LEROY & WESTERN RAILROAD COMPANY V. ROSS & PACKER.

1. EMINENT DOMAIN — *Compensation.* *Railroad Co. v. Orr,* 8 Kas. 419; *Hunt v. Smith,* 9 id. 137; *Reisner v. Union Depot & Rld. Co.,* 27 id. 382, followed.

2. ————— *Constitutional Law.* Under the provisions of ¿4, art. 12 of the constitution of the state, a railroad company must make full compensation to the corporation for the right-of-way appropriated, irrespective of any benefits or supposed benefits from the construction of the road, or any improvement thereby.

3. EMINENT DOMAIN — *Compensation — Witness, Incompetent — When Competent.* A farmer not engaged in buying and selling real estate, not knowing the market value of real estate, not living in the neighborhood of the land inquired about, and who does not know its situation and fertility, its advantages and disadvantages, cannot, as a witness, give his evidence as to the value of the land before and after the appropriation of the right-of-way by a railroad company. A farmer, conversant with the land as to its situation, soil, advantages, etc., is competent as a witness to the value, as having particular knowledge of the facts in issue.

4. ELEMENTS OF DAMAGE — *Erroneous Instruction.* Where a railroad is laid through a farm or tract of land used for stock purposes, or adapted to stock purposes, the accidental danger to which stock thereon will be exposed may be considered in giving compensation to the land-owner for the right-of-way appropriated for the railroad, so far as the same affects the value or depreciation of the farm or tract of land. The jury, however, should be instructed not to consider any danger or probable injury to stock, resulting from the fault or negligence of the railroad company in operating or failing to fence its road; and in the absence of any evidence showing that the farm or tract of land has stock thereon, or is adapted to stock purposes, an instruction to consider the increased risk, or the probability of stock upon the premises being accidentally killed or injured in the operation of the railroad, is misleading and erroneous.

5. DANGER FROM FIRE — *Rental Value — Instruction, When Misleading.* When a part of a farm or tract of land is appropriated for the right-of-way of a railroad, danger from fire to buildings, fences, timber or crops upon the remainder, so far as it depreciates the value of the property, may be properly considered in giving compensation to the land-owner; but as tending to show the depreciation in the value of the property by reason of the danger from fire, all the facts in regard to the situation of the property and improvements relatively to

the railroad should be introduced in evidence. The distance from the road to which the danger extends may also be shown. In the absence of all evidence tending to show a decrease in the rental value of the premises, or any increase in the cost of insurance on account of the danger from fire, and in the absence of all evidence tending to show any depreciation in the value of the property by reason of such danger, an instruction to the jury to consider accidental danger from fire to the premises, resulting from the operation of the road, will be misleading and erroneous. When there is sufficient evidence upon which to base instructions to the jury to consider, so far as it depreciates the value of the property, accidental danger from fire to buildings, etc., the jury should also be instructed that they should only take into consideration the risk or exposure of fire set out by trains and engines, without the fault or negligence of the company. If a fire occurs through the fault or negligence of the company, its servants or employés, the company is liable therefor; and, under the statute of this state, fires from trains or engines, in the operation of a road, are *prima facie* evidence of negligence on the part of the company.

### *Error from Sedgwick District Court.*

Ross & Packer appealed from the award of commissioners appointed to condemn a right-of-way for the *Leroy & Western Railroad Company* through Sedgwick county. The commissioners had awarded them $178.50. Trial at the February term, 1887, and verdict for plaintiffs for $812. New trial denied, and judgment for the plaintiffs. The defendant company brings the case here. The facts are stated in the opinion.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Sluss & Stanley,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Ross & Packer are the owners of the S.W. ¼ of sec. 25, T. 29, R. 2 W., in Sedgwick county. On the 15th day of March, 1886, the district judge of that county appointed commissioners to appraise the lands along the line of the Leroy & Western Railroad Company through the county, and to assess the damages for the right-of-way of the road. On the 26th day of April, 1886, the commissioners, after viewing the said S.W.¼, and the proposed route of the rail-

road over the land, assessed the damages as follows: Value of land taken for right-of-way, $120.50; damage to land not taken, $50; damage to crops, $8; aggregating, $178.50. The right-of-way cut off from the north side of the quarter about six acres of land. This six-acre strip is a long, wedge-shaped piece, at the lower end about two hundred yards wide, running to a point nearly eight rods in length. At the trial, the jury assessed the damages at $812, and judgment was rendered accordingly. The company excepted, and brings the case here. Upon the trial the railroad company requested the court to give the following instruction:

"You are instructed, in assessing the amount of plaintiff's recovery, that you may take into consideration any benefits by reason of construction of railroad through the premises of plaintiff, which may be special and peculiar to the tract of land in question; that is, benefits different from and in excess of benefits resulting to other adjoining land not intersected by the railroad."

The court refused the request, holding that benefits, although special, could not be set off against the value of the strip taken for the right-of-way, or against the damages to the remainder of the land. It is conceded by all the parties that neither general nor special benefits can be set off against the value of the strip or part taken for the right-of-way. The question is therefore presented, whether special benefits from the construction of the railroad, or any improvement thereby, may be set off against the damages to the remainder of the land. If it were not for the provisions of the constitution of the state, as a matter of justice, the benefits, direct and special, to the land-owner should be charged in making the estimate of the amount to which he is justly entitled for the appropriation of the right-of-way. (*Railroad Co. v. Kuhn*, 38 Kas. 675-8.) Under the constitution, are such benefits to be deducted or allowed from the compensation required to be paid? Section 4, art. 12 of the constitution ordains:

"No right-of-way shall be appropriated to any corporation until full compensation therefor be first made in money, irre-

spective of any benefit from any improvement proposed by such corporation."

Eminent domain; compensation; constitutional law; cases followed.   This section of the constitution was referred to and construed seventeen years ago, in *Railroad Co. v. Orr*, 8 Kas. 419. It was said in that case:

"The plaintiff in error offered evidence to show that benefits accrued to the land of appellant by reason of building the road. The court refused to permit any evidence on that point to go to the jury, and correctly. Section 4 of art. 12 of the constitution is conclusive on this point."

The writer of that opinion was KINGMAN, late Chief Justice. As he was a member of the constitutional convention of 1859, and the chairman of the committee upon judiciary in the convention, this decision is entitled to great consideration.

In *Hunt v. Smith*, 9 Kas. 137, Mr. Justice VALENTINE, following the case of *Railroad v. Orr*, supra, said:

"The commissioners must appraise the value of the land appropriated, and assess the damages to that not appropriated [not actually taken], irrespective of any supposed benefits to that not appropriated [not actually taken.]"

In *Reisner v. Union Depot & Rld. Co.*, 27 Kas. 382, it was said:

"Under the provisions of § 4, art. 12 of the constitution of the state, a railway company must pay for the right-of-way, irrespective of any benefit from the proposed improvement of the company, and the compensation for such right-of-way appropriated to the use of the company includes not only the value of the property taken, but also the loss the land-owner sustains in the value of his property by being deprived of a portion of it."

This construction of the constitution is fully sustained by the decisions of other states having similar constitutional provisions. In Pierce on Railroads, 222, it is said:

"The deduction of benefits in the assessment of damages is prohibited by the constitutions of some states — as Ohio, Kansas, and Alabama; and by statutes in other states."

Section 18, art. 1 of the Iowa constitution, in force in 1871, is in the following words:

"Private property shall not be taken for public use with-

out just compensation first being made or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantage that may result to said owner on account of the improvement for which it is taken."

In *Frederick v. Shane*, 32 Iowa, 254, it was held that —

"In the assessment of damages an individual sustains in the location of a road over his lands, the jury cannot, under article 1, §18 of the state constitution, take into consideration any advantage or benefit that may result to the owner by reason of the establishment of the road, as that it would tend to drain and improve the land." (See also to the like effect, *Brooks v. Railroad Co.*, 37 Iowa, 99.)

In Arkansas, § 9, art. 12 of the constitution of 1874 provides that compensation must be made in money, and be ascertained irrespective of any benefits from the proposed improvement. Under that provision, in *Railroad Co. v. Anderson*, 39 Ark. 167, it was said:

"The owner's damages for the right-of-way to a railroad over his land cannot be diminished by the estimated benefit likely to accrue to his remaining property by the building of the road."

In Indiana, in 1858 and also in 1873, the statute declared that, "in estimating any damages [for the appropriation of land for the right-of-way of a railroad] no deduction shall be made for any benefit that may be supposed to result to the owner from the contemplated work."

In *Railroad Co. v. Fitzpatrick*, 10 Ind. 120, the court decided that —

"Under the statute, the jury in determining the amount of damages resulting from the construction of a railroad are to exclude from their consideration all future benefits that may accrue to the owner of the land." (See also *Railroad Co. v. Horn*, 41 Ind. 479.)

It is claimed that as the provisions of our constitution concerning right-of-way were taken from the constitution of Ohio, the decisions of that state, prior to the adoption of our con-

stitution, must control.   To this we agree, and the result is the same as given above.

In *Giesy v. Railroad Co.*, 4 Ohio St. 308, it was said:

"That the jury in assessing the market value of the property appropriated to a public use, have no right to consider or make any use of the fact that it has been increased in value by the proposal or construction of the improvement."

The opinion in that case was delivered by Ranney, J., one of the ablest of the Ohio judges.  He said, among other things:

"The word 'irrespective' in the constitution relates to this full compensation, and binds the jury to assess the amount, without looking at or regarding any benefits contemplated by the construction of the improvement.   When this is done, and this consideration wholly excluded, the jury have nothing to do but ascertain the fair market value of the property taken, which is but saying that nothing shall be deducted from that value on account of such benefits."

In *Railroad Co. v. Ball*, 5 Ohio St. 568, it was said:

"After the testimony was closed, the court was requested by the counsel for the plaintiff in error to charge the jury, among other things, as follows: '3. That it is proper for the jury to consider the benefits, by reason of the appropriation, to the residue of the tract through which the appropriation is made, for the purpose of determining whether such residue is injured by the appropriation.   4. That if the jury are of opinion that the whole of the residue of the tract through which the appropriation is made is not diminished in value by the appropriation, that no damages are to be assessed for any injury which it may be claimed is done by the appropriation to such residue.'

"These instructions the court refused to give to the jury; and as to the third point requested, the court charged the jury —'That by the constitution of the state, and their oaths, they were required to assess the defendant's damages or the amount of his compensation, irrespective of any benefit proposed by the plaintiff as a railroad company, and that they were to exclude all real or imaginary benefits from their consideration.'

"As to the fourth point requested, the court charged the jury —'That the constitution of the state provides that the

compensation shall be assessed by the jury without deduction of benefits to any property of the owner. That to charge the jury as requested would be asking them to disregard this provision of the constitution as well as art. 13, § 5, which provides that the compensation made to the owner of the property shall be irrespective of any benefits from any improvement proposed by said corporation.' "

The supreme court, Bartley, C. J., delivering the opinion, said there was no error in the instructions of the court to the jury. There was something said in the opinion, that where a local benefit or advantage was blended with a local incidental injury, the jury might consider the same; but it was not decided in that case that the owner, for local incidental injury to the residue of his land, could be allowed any deduction for the separate local benefit. Both of the Ohio decisions referred to were rendered only a few years prior to the adoption of our constitution.

The case of *Kramer v. Railroad Co.*, 5 Ohio St. 140, cited as supporting the allowance of special benefits, was made under the Ohio constitution of 1802, and not the constitution in force at the time of the adoption of our own. The Ohio constitution of 1802 permitted the railroad to set off against the value of the property taken for public use, the increased benefits arising from the improvement; and it therefore differed widely from the Ohio constitution in force in 1859.

It is contended, however, by the railroad company that as this court, in *Railroad Co. v. Blackshire*, 10 Kas. 477, recognized that the fair way of determining the injury for the appropriation of a right-of-way is to determine the market value of the premises before the right-of-way is set apart, and then again after; and that the difference will be the true measure of damages; and as this rule has also been followed by the court in many cases, that this permits benefits to be considered; and therefore that the construction given to the constitutional provisions already referred to cannot be sustained. If this latter rule permitted separate benefits to be considered, so far as they affect the value of the premises injured, we suppose the rule must give way to the provisions of

the constitution, which all concede are paramount. But this rule does not conflict with our construction of the constitutional provision, excepting in a few cases only; and the conflict is more theoretical than substantial. The jury do not generally consider benefits, when they ascertain the market value of the land before the appropriation, and then the market value of the land after the appropriation or construction of the railroad, and determine the difference as the damages. But even if the rule in the Blackshire case is not always accurately correct, the railroad company cannot complain of the adoption of the rule, because under its construction it is beneficial, not detrimental.

We have already held that farmers living in the neighborhood of the land in question, well acquainted with its situation and fertility, its advantages and disadvantages, are qualified to state their opinions in regard to its value before and after the road was constructed through it. Such witnesses are competent, not strictly as experts having peculiar skill and scientific attainments, but as persons having particular knowledge of the facts in issue. We are not inclined to extend the rule in regard to this character of evidence; therefore the opinion of no farmer not living in the neighborhood of the land, and not acquainted with its situation and fertility, its advantages, disadvantages, etc., ought to be received in regard to the value of the land. Farmers not employed in buying and selling real estate, and having no knowledge of the facts in issue, ought not to be permitted to give their opinions from an examination of a map of the route of the road, or upon hearsay evidence only. (*Railway Co. v. Hawk*, infra.)

3. Eminent domain; compensation; witness—when competent, when not.

Several of the witnesses who were farmers were permitted to testify the amount, in their judgment, per acre that the land would be depreciated by reason of the location of the road across it. This class of evidence is not to be commended, and falls very nearly within the objections stated in *Railroad Co. v. Kuhn*, 38 Kas. 675–7. The opinion filed upon a motion for a rehearing in that case corrected the sec-

ond part of the syllabus reported in 38 Kas. 104. Witnesses competent therefor may give their opinions as to the value of the property appropriated for right-of-way, but not as to the amount of damages caused thereby. They may testify to the market value of the property before the right-of-way is set apart, and then again after; but any violation of this rule, prejudicial to the interests of the opposing party, perils a favorable verdict. In *Railway Co. v. Paul,* 28 Kas. 816, where two witnesses were allowed to state what per cent. the property was damaged by the appropriation of the right-of-way, the judgment was not reversed; but there were many other things stated in the opinion, tending to show that the evidence of these two witnesses alone was not sufficiently prejudicial, even if erroneous, to require a new trial; neither the syllabus, nor opinion, however, fully justifies the admission of such evidence. (See *Railway Co. v. Allen,* 24 Kas. 33; *Roberts v. Comm'rs of Brown Co.,* 21 id. 247; *Railroad Co. v. Kuhn,* supra.)

It is objected that the court instructed the jury that they might take into consideration the increased risk or exposure by fire on the plaintiffs' premises, which might accidentally result from the operation of the road through the same; and also that they might consider the increased risk or probability of stock upon the premises being killed or injured as the result of accident for which the company would not be responsible. The design of the law is to fully compensate the land-owner for all injury he may sustain by reason of the appropriation of his land to the use of the road, and which shall grow out of or be occasioned by its location and use at that place. This being true, it follows that it is proper for the jury to consider whether his stock would be liable to be accidentally killed, or his crops, fences and buildings destroyed by fire, without fault on the part of the railroad company. If there was a liability to such injuries, its tendency would be to depreciate the value of the farm in its use, as well as in the market. It must be borne in mind that these things are proper to be considered so far only as they tend to depreciate

the value of the farm or tract of land. (*Railroad Co. v. Kregelo*, 32 Kas. 610; *Weyer v. Railroad Co.*, 68 Wis. 180; *Railway Co. v. Teters*, 68 Ill. 144; Lewis on Eminent Domain, §§ 496, 497; Mills on Eminent Domain, 2d ed., §§ 162, 163.)

But instructions concerning the danger to which the stock thereon will be exposed, so far as the same affects the value of the farm, or instructions concerning danger from fire to buildings, fences, timber or crops upon the remainder of the land, so far as it depreciates the value of the property, ought not to be given, unless there is evidence introduced in the case upon which to found such instructions. In this case there is scarcely any, and perhaps we may say no evidence tending to show any special facts of depreciation in the value of the property from danger from fire or from danger to stock. Chief Justice Shaw, in *Proprietor v. Railroad Corp.*, 10 Cush. 385, expressed the opinion that danger from fire may enter into the estimate of damages, if the danger be "imminent and appreciable." Where, however, the house and other buildings on the premises are distant from the right-of-way, and beyond real danger from the operation of the road, no compensation for danger from fire to those buildings should be allowed. If crops or any improvements are in such close proximity to the railroad as to render danger from fire "imminent and appreciable," then, of course, this matter should be considered. (*Weber v. Railroad Co.*, 2 Metc. 147; *Hatch v. Railroad Co.*, 18 Ohio St. 92.)

The danger or exposure of buildings, fences, timber or crops, from fire, is an entirely different question from that involved in its destruction by fire without fault of the company. In the one case, while the risk or exposure may somewhat decrease the value of the property, and is a legitimate consideration for what it may be worth in fixing the compensation to the owner, in the other case the destruction of buildings, fences, timber or crops by fire is a field of inquiry so remote and contingent as to be without and beyond any range of damages known to the law. (*Lance v. Railroad Co.*, 57 Iowa, 636.)

*4. Instructions to be given — to be refused.*

In this case it appears from the evidence that there was a house and barn somewhere upon the farm, but we cannot tell from the evidence how near they were to the railroad or right-of-way; very little is testified to about any crops upon the farm along or in the vicinity of the right-of-way; no evidence was offered tending to show a decrease in the rental value or increase of the cost of insurance of the property, whereby it was depreciated by reason of danger from fire from passing trains. If instructions regarding danger from fire to buildings, crops, etc., were deemed necessary, evidence should have been offered showing all the facts in regard to the situation of the property and improvements relatively to the railroad. The distance from the road to which the danger from fire extends might also have been shown. Again, if special instructions were deemed important concerning the increased risk or probability of stock upon the premises being accidentally killed or injured, then evidence should have been offered that the farm or land was used for stock purposes, or that it was specially adapted for those purposes. If a railroad runs through a farm used for agricultural purposes only, or runs through a lot in a city or village where stock are not kept, an instruction concerning the danger to which the stock upon the property will be exposed, would be misleading and erroneous. In the absence of evidence tending to show danger from fire or danger to stock, special instructions asking the jury to consider these things should not be given. In this state, the necessity of showing special facts upon which to base instructions concerning exposure to fire and danger to stock by the operation of a railroad are more important than in many states, because in this state a railroad company is not only responsible for all fires which occur through the negligence of the company, its servants or employés, but the statute makes the setting out of such fires, in the operation of a railroad, *prima facie* evidence of negligence on the part of the company. (Comp. Laws of 1885, ch. 84, § 101; *Railroad Co. v. Kregelo*, supra.) In this state, railroad companies are responsible to the land-owner

5. Danger from fire; instruction—when to be given, when not.

or occupant for all injuries negligently done to stock by the company, its servants or employés; and are also liable for all injuries to stock caused by the road not being fenced through the land. (Comp. Laws of 1885, ch. 84, §§ 28, 30, 34.) There is, therefore, only the risk of exposure by fire and the risk or exposure of stock to be considered, when such risk or exposure occurs without fault or negligence on the part of the railroad company. As to what particular questions of fact should have been submitted to the jury, see *Railroad Co. v. Fechheimer*, 36 Kas. 45; *Railway Co. v. Hawk*, 39 id. 638.

For the errors referred to, the judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.