THE OTTAWA, OSAGE CITY & COUNCIL GROVE RAIL-
ROAD COMPANY v. R. E. FISHER.

FARM—*Market Value—Incompetent Witnesses.* Farmers who reside in
the vicinity of a particular farm, who are acquainted with the farm,
but who cannot testify to its market value or its usable or productive
value, ought not to be permitted to state how much, in their opinion,
the farm is depreciated in value by the appropriation of the right-
of-way for a railroad across it.

*Error from Osage District Court.*

THIS was an appeal in the court below from the award of
the commissioners as to the appraisement of value and the as-
sessment of damages of the right-of-way of the *Ottawa, Osage
City & Council Grove Railroad* through and across the south-
west quarter of section 36, township 16 south, range 16 east,
in Osage county, the property of *R. E. Fisher.* The com-
missioners allowed $175 as the amount of damages for the
appropriation of the right-of-way. The amount of land
actually taken was 5¾ acres, and a triangular piece of a half-
acre in the southeast corner of the quarter was cut off from
the residue of the farm by the right-of-way. Trial had on
the 30th day of November, 1887, before the court with a jury.
The jury assessed the damages of Fisher at $500. They also
made the following special findings of fact:

"1. What amount of damages do you allow plaintiff on ac-
count of his land being bounded on the south by a barb wire
fence instead of a hedge fence? A. Nothing.

"2. Is not the barb wire fence on north side of right-of-
way on premises in question, composed of cedar posts sixteen
feet apart, with four barbed wires fastened thereon? A. Yes.

"3. What is the length of the curve of the railroad on
northwest part of the premises in question? A. 596 feet.

"4. What is the distance from the southeast corner of the
farm in question, northerly on the west line of said farm, to the
south side of the railroad right-of-way? A. 152 feet.

"5. Prior to the appropriation of the right-of-way across
the farm in question, was not the only place cattle could get

down to the creek on the east side of the creek a path about four feet wide? A. Yes.

"6. Is not such path about 50 feet north of the right-of-way? A. Yes.

"7. What amount do you allow for the land actually taken by the right-of-way on the farm in question? A. $287.50.

"8. What amount do you allow plaintiff on account of the damages to triangular half-acre in southeast corner of the farm in question? A. $25.

"9. What damage do you allow plaintiff on account of frightening horses and cattle by passing trains? A. Nothing.

"10. What damage do you allow plaintiff on account of fires which may be communicated from passing trains? A. Nothing.

"11. Are not the house, barn, well and cattle corral close to the north line of farm in question, and nearer northeast than northwest corner? A. Yes.

"12. Does not the railroad cross at and near to the south line of the farm in question? A. Yes.

"13. How many acres were there in the farm in question at the time the right-of-way was appropriated across it? A. 160 acres.

"14. What was the market value of such farm just before the right-of-way was appropriated across it? A. $30 per acre."

On December 28, 1887, the railroad company filed its motion for a new trial, containing all the statutory grounds. This motion was overruled, and judgment entered upon the verdict of the jury. The *Company* excepted, and brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *J. G. Egan,* for plaintiff in error.

*Jno. W. Lord,* and *J. W. Deford,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The railroad company contends that the testimony of three witnesses—Enderton, Peterson, and Rice —introduced on the part of the land-owner, was improperly admitted; that this testimony was greatly prejudicial, and therefore that the judgment should be reversed, and a new

trial granted. Enderton testified that he was acquainted with the farm in controversy; that he had known it for about thirteen years; that he had been over it; that he had seen it since the railroad was built across it; that he had been engaged in farming, off and on, for sixteen years in Osage county, in the neighborhood of the farm; that he had had the control of the farm over which the right-of-way passed for three years; that he had at one time owned a half-interest in it; that the market value of the farm was from $6,000 to $8,000 before the appropriation of the right-of-way. He then stated that in his judgment the farm would be worth $1,000 or $2,000 less after the right-of-way was taken for the railroad. The railroad company objected to all of this testimony. The witness further testified as follows:

"Q. You are asked first whether you know what the market value is of certain land like this farm and other farms like this in this vicinity? A. I do.

"Q. Now, having given that answer, what in your judgment was the market value of this farm just before this right-of-way was located across it, which was on the 7th of January, 1886? A. Well, the market value of such land as this was about six thousand dollars.

"Q. Now, what in your judgment was the market value of that farm just after that right-of-way was located across it and that strip taken for railroad purposes? A. I don't know that I can answer that question, because I don't know of any farms being offered or sold, or any trades being asked for this farm at that time.

"Q. What is your best judgment as to its value after that location? A. It wouldn't be worth as much to me.

"Q. What is your judgment as to what it would be worth, fairly worth, in the market? A. I don't think it would sell for as much within a thousand or twelve hundred.

"Q. What caused this diminution in the value to that extent? A. Well, it would be the loss of a portion of the best land on the farm, and the inconvenience of having the railroad across it."

As Enderton was able to tell the market value of the farm at the time of the appropriation of the right-of-way, and as he was a farmer, we do not think that there was sufficient

error in his testimony or answers to reverse the judgment. (*L. & W. Rly. Co. v. Hawk*, 39 Kas. 638; *K. C. & S. W. Rld. Co. v. Ehret*, 41 id. 22.)

Peterson and Rice both testified that they were farmers, but neither knew the value of the farm before or after the appropriation of the right-of-way. They could not testify as to its usable or productive value. Peterson, however, testified that in his judgment the railroad diminished the value of the farm $5 or $6 an acre. Rice testified that the construction of the railroad over the farm diminished its value $600. This testimony was erroneous, and should not have been received.

In *L. T. & S. W. Rly. Co. v. Paul*, 28 Kas. 816, two witnesses testified that they did not know the market value of the farm, but knew the farm, its situation and condition, both before and after the appropriation. They were then asked if they knew what per cent. of difference there was in the value before and after the appropriation. In that case, doubts are expressed concerning the competency of such testimony, but the judgment was not reversed, because of the large preponderance of testimony supporting the verdict.

In *L. & W. Rly. Co. v. Ross*, 40 Kas. 598, it was stated that —

"Several of the witnesses who were farmers were permitted to testify the amount per acre, in their judgment, that the land would be depreciated by reason of the location of the road across it. This class of evidence is not to be commended, and falls very nearly within the objections stated in *Railroad Company v. Kuhn*, 38 Kas. 675, 677."

In *C. K. & W. Rld. Co. v. Dill*, 41 Kas. 736, 21 Pac. Rep. 778, it was stated that—

"The next alleged error is that the court below permitted a witness, Reuben Haffner, who could not testify what the property was worth either before the right-of-way was appropriated or afterward, to testify that the plaintiff's land was worth, after the appropriation of the right-of-way, about one-third less than it was before. This manner of proving damages to land over which a railroad is constructed and through which a right-of-way has been appropriated is certainly not to be commended or encouraged, and in many cases it would

constitute material and substantial error." (*Railway Co. v. Paul*, 28 Kas. 816.)

In *K. C. & S. W. Rld. Co. v. Ehret*, 41 Kas. 22, it was decided that—

"Farmers who reside within the vicinity of a particular farm, who are familiarly acquainted with the farm, who know its capabilities, and who can testify that they know its value, may give their opinions in evidence with respect to its value, and such opinions are competent evidence, although such farmers may not know of any sale of any farm in that vicinity."

The testimony of Peterson and Rice was not admissible under any of the foregoing authorities. On the part of the land-owner, seven witnesses testified that the market value of the land immediately after the appropriation of the right-of-way was from $4 to $7 less per acre than before the appropriation of the right-of-way. Eight witnesses testified upon the part of the railroad company that as the railroad ran along the south line of the farm the only injury to the farm was the value of the land actually taken for the right-of-way and the half-acre cut off by the railroad; that therefore the market value of the farm after the right-of-way was taken was only $150 to $200 less than before.

Under these circumstances, the testimony of the two witnesses referred to was the more prejudicial. The judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.