The Chicago, Kansas & Western Railroad Company
v. A. R. Palmer.

EMINENT DOMAIN — *Damages* — *Instructions* — *Error.*  On the trial of an
appeal from the award of commissioners, made in condemnation
proceedings for a right-of-way for a railroad company, it is error for
the trial court to instruct the jury that they may take into consider-
ation, as tending to depreciate the market value of the land through
which the right-of-way is located, the damages for stock liable to be
killed by moving trains, and for fires liable to be set out by locomo-
tives, passengers, and employés, without making any distinction be-
tween what may be negligently done, and what may occur accidentally
and without negligence.

*Error from Chase District Court.*

THE opinion contains a sufficient statement of the facts.
Judgment for the plaintiff *Palmer,* at the February term,
1888.   The defendant *Railroad Company* brings the case to
this court.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff
in error.

*Madden Bros.,* and *J. G. Waters,* for defendant in error.

Opinion by SIMPSON, C.: The defendant was the owner
of 2,960 acres of land in Chase county, lying together in one
compact body, except that 160 acres was separated from the
residue by a public highway.   That part of the land which
was cultivated consisted of about 100 acres of bottom land on
the South Fork of the Cottonwood river; the remainder of the
farm consisted of an eastern and western pasture, and feed-lots
for stock.   This farm was used for stock and crop purposes.
Three hundred and sixty-five acres of the farm were bottom
land, including timber, and the rest was upland, devoted to
pasturage.   The farm consists of the south half of sections 28
and 27, and the southeast quarter of section 26, and the south
half of the northeast quarter of section 28, and the north half
of the northeast and northwest quarters of section 34, all of

section 35 in township 20 of range 8, and all of sections 2 and 11 in township 21 of range 8.   It is thus two and one-half miles from east to west, and three and one-half miles from north to south, at extreme points.   The dwelling-house, barn, cattle-yard and scales are near the northwest corner of the southeast quarter of section 28.   The railroad enters the land from the north, about one-fourth of the distance from the northeast corner of the south half of the northeast quarter of section 28, and runs diagonally through that 80 acres and through the southeast quarter of section 28, and passes out at the southeast corner of said southeast quarter of section 28. This leaves about one-tenth of the farm to the west and nine-tenths to the east of the railroad line.   The dwelling-house and other improvements mentioned are situated about 40 rods west of the right-of-way.   The length of the right-of-way through the farm is 4,471 feet.   The land-owner appealed from the award of the commissioners to the district court, and a jury trial was had.   We will first examine and see what elements of damage were considered and passed upon by the jury in their special findings.   The jury estimate no damage for the water standing on the west side of the right-of-way; nor for flooding the land by reason of any ditch, holes or barrow-pits on the east side of the right-of-way; nor for building any ditch to drain surface-water accumulated on the right-of-way; nor for making culverts under the farm-crossings; nor for the ditch made for the purpose of strengthening the draw.   They do estimate damages for the following causes : For extra labor in opening and shutting gates in crossing the right-of-way; for hauling feed from the land on the west side to the corrals on the east side; for extra time in going to the different farm-crossings; to the use of the land east of the South Fork as and for pasture; for loss in market value to the land bordering on the South Fork, and east of it, by location of the right-of-way through it; for the increased cost of cultivation, by reason of extra labor, outside of the extra labor necessary in making additional turns; and for extra labor in cultivation. They do not state any definite sum as the amount to be awarded

by reason of these various elements of damage. No motion was made, or effort recorded, to make their answers more definite and certain. The only definite sum — that of $100 — which was assessed in the answers to the special questions submitted was for the value of the land which will have to be used for turn-rows along the side of the right-of-way. Their general verdict was: The value of the right-of-way, $512.50; damages to the land not taken, by reason of the right-of-way, $2,750; interest, $380.62.

I. The railroad company brings the case here, and insists, first, that the damages awarded by the jury for the land not taken were so excessive as to show that the same were allowed by the jury under the influence of passion and prejudice. To enforce this contention it is urged by counsel for plaintiff in error that the only real damages there could be were: First, in cutting off stock kept in pasture "B" from the water in the South Fork, remembering that such stock was already cut off by a sixty-foot public highway; and second, the extra time required in the cultivation of that part of the farm used for raising corn, west of the right-of-way; and third, the extra time required in hauling stuff from one part of the farm to the other, in reaching railroad crossings.

It is further said that it appears from the evidence of all the witnesses examined for the land-owner that in estimating the elements of damage, the extra turns made necessary by the right-of-way cutting the crop land into irregularly shaped pieces, in the preparation and cultivation of the land, and in gathering the crop, constituted the great bulk of damages sustained by the land-owner. And it is further urged that it is conclusively shown by the evidence contained in this record that this particular item of damage at the highest possible figure could not exceed $775, and that the aggregate of all the items of damage taken into consideration by a jury could not in any event exceed the sum of $1,975, and hence it appears that this allowance was excessive in at least one-fourth of it, to wit, $675. We cannot go into the details of all this evidence and incumber an opinion with it. It may be a suf-

ficient answer to the claim of the counsel for the plaintiff in error to say that the court at its request submitted to the jury special interrogatories about fifteen different things which were claimed to have been elements of damage in this case. The jury say by their special findings that in estimating damages they do not base anything on six of these elements. They do say that they take into consideration nine of them, and in one they fix the sum of $100 as the amount of damages occasioned by that particular one; and as to the other eight return no definite sum. So that the actual result of that trial, so far as the jury are concerned, is, that they estimate the damages to the remainder of the tract at $2,750, and that this estimate is arrived at by grouping together the nine items specified in the special findings that contributed to the damages, and the other items included in the instructions of the court but not contained in the special interrogatories. Now on this state of the record we are asked to assume that one particular item alone constitutes the great bulk of the damage. The jury heard all the evidence, they viewed the premises and applied it in the light of that inspection, and we would hesitate long before reversing this case on account of a belief that the amount awarded was so large as necessarily to create the belief that the jury were swayed by passion and prejudice. It seems to be admitted that there is ample justification in the evidence preserved in this record to support a verdict for $1,975, but this apparently excludes the consideration of some elements that the jury had a right to consider. There are in cases of this character some elements of damage that may be reduced to a certainty in dollars and cents by a purely mathematical process; but take, for instance, the effect of all these things on the market value of the farm, and all a jury can do is to arrive at a conclusion founded on the opinions of witnesses. How much they all affect the market value can never be determined with mathematical precision. In the judgment of the writer of this opinion, the verdict is a very liberal one, but not so large as to induce a belief that it is excessive.

8 — 44 KAS.

II. The next contention of counsel for the railroad company is based upon the following instruction, given by the court to the jury:

"No conjectural or supposititious elements of damage can be considered, so far as allowing for them specific sums of money; nothing can be allowed as an item of special damages unless it can be attributed to some cause known to exist, the effect and consequence of which is not speculative in character, but can be calculated in dollars and cents, with reasonable certainty; hence the liability of stock being frightened and stampeded or killed by moving trains, or fires set out by locomotives, or passengers, or employés, does not constitute a basis for special compensation, and are not items which can be calculated in dollars and cents; these and such-like matters may, however, be considered as tending to the general depreciation of the value of the land by impairing its use for that which it was specially adapted, and disinclining purchasers to pay what it would otherwise be worth."

The court in plain words told the jury that certain elements of damage that do not constitute a basis for special compensation, and cannot be calculated in dollars and cents, may be considered as tending to the general depreciation of the value of the land, by impairing its use for that which it was specially adapted, and disinclining purchasers to pay what it would otherwise be worth. These elements were, first, liability of stock being frightened and stampeded; second, liability of stock being killed by moving trains; third, liability of fires set out by locomotives, or passengers, or employés. As to the first of these, it was said by Chief Justice HORTON in the case of the *A. & D. Rly. Co. v. Lyon*, 24 Kas. 745:

"In assessing damages done to land by reason of the appropriation of a right-of-way through it for a railroad, the liability of teams being frightened, or that additional care by the land-owner may be necessary in the future as to such teams by reason of the proximity of the railroad, does not of itself constitute any basis for special compensation. Such damages are speculative, and not the proper subject of inquiry and damage."

This case is made the subject of a short note by Mr. Wood

in his work on Railroad Law, vol. 2, p. 917, note 4. In this note he couples together the frightening of the teams and the extra care necessary in the use of the teams, and applies the language of the court only to the extra care. This construction of the decision leaves it as sustaining his text, that the liability of frightening teams by passing trains is a proper element of damage. While such construction seems to be warranted by the language of the instruction given by the trial court to the jury, that was assigned as the error complained of in that case, its language being:

"I will say that the fact of the liability of teams being scared, and the additional care necessary to be used in using such teams by the plaintiff upon the land in question, is an element of damage you can take into consideration."

Yet the court undoubtedly meant the liability of frightening stock as well as the extra care. The trial court combined the two propositions and treated them as one element; and this court says that this direction to the jury permitted speculative damages, for which no compensation is properly recoverable. From this it is manifest that this court has passed on the naked question of the liability of stock being frightened, against this instruction. Considering this item in connection with the second one enumerated in the instruction, to wit, the liability of the killing of stock by moving trains, while it may be said that there is a well-founded distinction between the statutory remedy for stock negligently killed by passing trains, and the liability of stock being frightened and killed by the operation of the road, yet this distinction is not clearly made in the instruction, or it may be said is not made at all.

As to the remaining item, of liability of fires, the case of *Railroad Company v. Kregelo*, 32 Kas. 613, is broad enough to cover all phases of the question. This case recognizes and clearly expresses the distinction that is claimed as to the other items. The court says:

"The general current of authority is to the effect that in awarding damages to the owner of land taken for a railroad, the exposure of his remaining land and buildings to fire from

the company's trains or engines is a proper element to be considered in making the estimate.   This upon the ground that the increased exposure to fire depreciates the property.   .   . But it is competent only to take into consideration the risk of fire set out without the fault of the company and by reason of the operation of the road through the premises.   .   . If fires occur through the negligence of the company, it would be liable to the owner, and this element should not be taken into account in estimating the compensation."

Since that opinion the legislature of this state, in 1885, provided a statutory remedy for the recovery of damages occasioned by fire that occurs by the negligent operation of the road.   This case makes clear the distinction between the actual loss by fire and the liability to loss that affects the value of the property.   This same distinction may possibly exist in the consideration of the other items, but if it does, the language of the instruction seems to be broad enough to allow the jury to estimate all the negligent killing of stock and setting-out of fires, as well as those not negligent.   It does not seem to us, as to those items of damage that permit the distinction contended for—assuming for the purposes of this opinion that such a distinction exists—that it is not expressed, but the general language of the instruction would authorize the jury to take into consideration each one of these specific items of damage without regard to the negligence of the railroad company, and to take into account at least one item that this court has said is speculative, and not to be considered. The jury were misdirected by this instruction, and it was material error to give it.

It is recommended that the judgment of the trial court be reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.